UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2016 MAR -2  PM 2: 10

CLERK'S OFFICE
AT GREENBELT

BY_____DEPUTY

| | |
|---|---|
| MANGA ANANTATMULA<br>306 Blossomtown Drive<br>Franklin, NC 28734<br><br>Plaintiff,<br><br>v.<br><br>THE CENTECH GROUP, INC.<br>6402 Arlington Blvd.<br>10th Floor<br>Falls Church, VA 22042,<br><br>Serve Registered Agent:<br>Fernando W. Galaviz<br>6402 Arlington Blvd.<br>10th Floor<br>Falls Church, VA 22042,<br><br>Defendant. | Case No. RWT 16 CV 0609<br><br>JURY TRIAL DEMANDED |

CIVIL COMPLAINT FOR EQUITABLE AND
MONETARY RELIEF AND DEMAND FOR JURY TRIAL

Plaintiff Manga Anantatmula, by and through counsel, hereby files suit against Defendant The Centech Group, Inc. (Centech) for violations of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101, *et seq.*.

JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because this is an action arising under the laws of the United States, specifically the ADA, 42 U.S.C. §§ 12101, *et seq.*

2. Anantatmula has exhausted her administrative remedies.

1

3. Venue in this District and in this Division is appropriate pursuant to 28 U.S.C. §§ 1391(b) and 1391(c), as Defendant has extensive and deliberate contacts in this District and Division.

## PARTIES

4. Plaintiff Anantatmula is a resident of the state of North Carolina and a citizen of the United States. Plaintiff is an "employee" as defined at 42 U.S.C. § 12111(4).

5. Defendant Centech, a Virginia corporation headquartered in Virginia, provides services out if its business location in Gaithersburg, MD. Defendant Centech is an "employer" as defined at 42 U.S.C. § 12111(5)(A).

## FACTUAL ALLEGATIONS

6. Anantatmula owns Project and Knowledge Concepts (PKC), a women-owned small business.

7. In 2014, Anantatmula, as an owner of PKC, worked with subcontractor ALQIMI to win a new contract with the Defense Policy Review Initiative (DPRI) at the Marine Corps Air Station in Iwakuni, Japan. Centech was the prime contractor. ALQIMI used Anantatmula's resume in its bid proposal.

8. Anantatmula began working in Iwakuni on April 24, 2014.

9. In August 2014, client DPRI disciplined ALQIMI security officer, Bryan Findlay. Anantatmula did not know the reason for this discipline, but John J. Ruttenberg, the site lead for ALQIMI, accused Anantatmula of "throwing Findlay under the bus." Despite her denials of any involvement, Ruttenberg continued to accuse Anantatmula of reporting Findlay to DPRI.

10. In November 2014, Shawna Pederson another employee of ALQIMI replaced

Martin Opitz as a Lead Project Manager under Ruttenburg's supervision. Ruttenberg instructed Pederson to "watch Anantatmula closely." Both Ruttenberg and Pederson treated Anantatmula like a subordinate, directing Anantatmula's work and verbally abusing her.

11. At this same time, Findlay began harassing Anantatmula. Findlay would purposely block Anantatmula's path when he saw her in the hallway, and he was also verbally abusive toward her. When Anantatmula complained to Pederson about Findlay's behavior, Pederson responded, "Don't mess with him."

12. In December 2014, Anantatmula complained to ALQIMI Project Manager Lead Marty Opitz regarding Ruttenberg, Pederson, and Findlay. Opitz instructed Anantatmula to "repair her relationship with Ruttenberg and Pederson right away," noting that Anantatmula was "in the danger zone."

13. On December 23, 2014, Anantatmula complained to DPRI Contract Officer Representative and Senior Program Analyst Marty Ziola about Ruttenberg's, Pederson's, and Findlay's behavior.

14. On January 21, 2015, Anantatmula complained to DPRI Deputy Director John Lackie about Ruttenberg's, Pederson's, and Findlay's behavior.

15. Anantatmula later learned that Lackie reprimanded Centech and ALQIMI based on her complaint.

16. Bethany Schmidt, counsel for ALQIMI, called Anantatmula after hearing of her complaints, and told Anantatmula she understood that Anantatmula was another subcontractor, not an employee of ALQIMI. Schmidt said she would advise ALQIMI staff of Anantatmula's status as a subcontractor. Anantatmula never heard from Schmidt again, although Anantatmula consistently copied Schmidt on emails detailing harassment by ALQIMI staff.

17. On January 23, 2015, Anantatmula broke her ankle and required the use of crutches for seven weeks.

18. Following the accident, Findlay and Ruttenberg would make Anantatmula stand for hours on crutches while they sat. Findlay and Ruttenberg would call Anantatmula into a meeting in a room with only two chairs, and they would take both chairs. These meetings would last for hours. They also complained about her inability to climb stairs.

19. On January 28, 2015, Anantatmula complained to Centech President James Tindell, copying Centech Vice President Jason Spezzano, ALQIMI Director George Packard, Robert Kreis, and Ruttenberg regarding Ruttenberg's and Pederson's harassment. As a result, ALQIMI and Centech removed Pederson from her position of Lead Facilities Project Manager.

20. On two occasions, Anantatmula had sought to subcontract directly under Centech, rather than under ALQIMI, but Centech and ALQIMI refused to alter the arrangement.

21. On March 10, 2015, Anantatmula complained to ALQIMI Senior Vice President Ravinder Birgi that ALQIMI managers and employees, including Ruttenberg and Findlay, were harassing her because of her temporary disability. Anantatmula described the previous harassment that took place after she broke her ankle, along with an incident where Ruttenberg had taken her Common Access Card (CAC) without telling her, resulting in Anantatmula searching two floors of the building, the parking lots, walkways, and the restroom on her broken ankle. Anantatmula stated, "I am convinced after today that I have become a target for harassment in the work place."

22. On the same day, Anantatmula complained to Findlay about the incident with the CAC, stating that she felt she was a "target for harassment."

23. In early March 2015, Ziola asked Anantatmula to test a management tool that

DPRI had developed. The tool did not work well, and Anantatmula informed Ruttenberg. While Ruttenberg agreed, he also stated, "Are you sure you want me to tell [Ziola]? Are you sure you're not lying?"

24. On March 23, 2015, at a meeting with DPRI, Centech and ALQIMI staff, and Anantatmula, Ziola apologized to Anantatmula regarding the failure of the management tool.

25. Later that day, Ruttenberg circulated an email noting that Ziola took responsibility for the failure of the management tool, but Ruttenberg also blamed Anantatmula.

26. On March 28, 2015, Birgi notified Anantatmula that her contract would not be renewed, terminating her employment. When Anantatmula asked Spezzano why she was being fired, Spezzano stated that it was a "performance issue" and cited Ruttenberg's email from March 23, 2015, regarding the failure of the management tool.

27. Prior to this interaction, no one from ALQIMI, Centech, or DPRI had ever complained about Anantatmula's performance. In fact, excluding the March 23, 2015 email, she had only received commendations regarding her performance.

28. On March 29, 2015, Birgi and Packard informed Anantatmula that by the next business day, she must move off the military base, dispose of her possessions, and return to the United States.

29. Anantatmula asked for a few extra days to prepare for her departure, but later Ruttenberg and Findlay would not allow it.

30. On March 30, 2015, Findlay reported a false claim that Anantatmula was demonstrating "suicidal tendencies" to the Provost Marshall's Office (PMO). Anantatmula has never been suicidal, and this allegation was used to harass Anantatmula while having the potential to compromise her security clearance and reputation.

31. When Anantatmula arrived at the main gate of the base on March 31, 2015, two soldiers told her she was not allowed to enter the base due to PMO orders. The soldiers ordered her to drive straight to the PMO slowly, so they could follow her. At the PMO, Sergeant Cooley confirmed that her access had been revoked.

32. Anantatmula incurred substantial financial damages when she was forced to abandon her possessions and return to the U.S. with very little notice based on her abrupt termination.

## COUNT I
### The Americans with Disabilities Act of 1990
### 42 U.S.C. § 12101, *et seq.*
### Discrimination

33. Anantatmula hereby incorporates all allegations set forth in all the foregoing paragraphs as though fully alleged herein.

34. At all times relevant to this complaint, Anantatmula was an "employee" as defined at and provided for under the ADA. 42 U.S.C. § 12111(4).

35. At all times relevant to this complaint, Centech was an "employer" as defined at and provided for under the ADA. 42 U.S.C. § 12111(5)(A).

36. On January 23, 2015, Anantatmula broke her ankle and required the use of crutches for seven weeks.

37. During that time, Anantatmula had a temporary disability as the term is defined under the ADA, in that she had an impairment that substantially limited one or more major life activities.

38. During that time, Defendant regarded Anantatmula has having a disability. Defendant had notice of Anantatmula's broken ankle and the limits it imposed upon her.

39. Defendant discriminated against Anantatmula because of her temporary disability

when they:

      a. Subjected her to a hostile work environment;

      b. Refused to allow her to subcontract under Centech; and

      c. Terminated her employment.

40. Defendant discriminated against Anantatmula based on the perceived disability of mental illness when they reported Anantatmula to the PMO office for suicidal tendencies.

41. This allegation was used to harass Anantatmula while having the potential to compromise her security clearance and reputation.

42. These adverse actions occurred under circumstances that raise a reasonable inference of unlawful discrimination due to Anantatmula's temporary disability and her perceived disability.

43. Anantatmula has filed a charge of discrimination with EEOC and has received right to sue letters for the charges against each Defendant.

44. Defendant had no legitimate business reason for their adverse actions. Defendant's stated reasons for the adverse actions are pretextual.

45. Anantatmula has sustained damages as the result of Defendant's illegal discrimination in violation of the ADA, including, but not limited to, economic damages, damage to her career, and emotional, mental, and physical distress and anxiety.

46. Anantatmula is entitled to such legal or equitable relief as will effectuate the purposes of the statute, including but not limited to economic, compensatory and punitive damages, injunction, and reasonable costs and attorneys' fees.

## COUNT II
### The Americans with Disabilities Act of 1990
### 42 U.S.C. § 12101, *et seq.*
### Retaliation

47. Anantatmula hereby incorporates all allegations set forth in all the foregoing paragraphs as though fully alleged herein.

48. At all times relevant to this complaint, Anantatmula was an "employee" as defined at and provided for under the ADA. 42 U.S.C. § 12111(4).

49. At all times relevant to this complaint, Centech was an "employer" as defined at and provided for under the ADA. 42 U.S.C. § 12111(5)(A).

50. Anantatmula engaged in protected activity when on March 10, 2015, she complained that managers and employees were harassing her because of her temporary disability.

51. Defendant subjected Anantatmula to adverse employment actions as reprisal for her protected activity when they:

   a. Subjected her to a hostile work environment;

   b. Refused to allow her to subcontract under Centech;

   c. Falsely alleged that she was demonstrating suicidal tendencies; and

   d. Terminated her employment.

52. The close temporal proximity between Anantatmula's protected conduct and her termination, along with Defendant's hostility toward Anantatmula following her protected conduct, demonstrate causation.

53. Defendant had no legitimate business reason for their adverse actions. Defendant's stated reasons for the adverse actions are pretextual.

54. Anantatmula has sustained damages as the result of Defendant's illegal

discrimination in violation of the ADA, including, but not limited to, economic damages, damage to her career, and emotional, mental, and physical distress and anxiety.

55. Anantatmula is entitled to such legal or equitable relief as will effectuate the purposes of the statute, including but not limited to economic, compensatory and punitive damages, injunction, and reasonable costs and attorneys' fees.

### PRAYER FOR RELIEF

Plaintiff Manga Anantatmula prays this Honorable Court for judgment against Defendant The Centech Group and respectfully demands economic damages, compensatory damages, punitive damages, reasonable attorney's fees, pre-judgment interest, court costs, and any other relief that this Court deems just and equitable.

### DEMAND FOR JURY TRIAL

Plaintiff Manga Anantatmula demands a trial by jury for any and all issues proper to so be tried.

Plaintiff Manga Anantatmula
*By Counsel*

R. Scott Oswald
The Employment Law Group, P.C.
888 17th Street, NW, 9th floor
Washington, D.C. 20006
(202) 261-2838
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com
*Counsel for the Plaintiff Manga Anantatmula*

9